CHARLES D. CARTWRIGHT, Respondent, *v.* THE ROME, WATERTOWN AND OGDENSBURG RAILROAD COMPANY and Another, Appellants.

*Railroad company — transportation of perishable property — repeal of section 36 of chapter 140 of 1850 by chapter 565 of 1890.*

A railroad company receiving perishable property for transportation is bound to forward it immediately to its destination. This is its obligation at common law, and the repeal of section 36 of chapter 140 of the Laws of 1850 by chapter 565 of the Laws of 1890, does not affect the common-law obligation of railroad companies in this respect.

APPEAL by the defendants, The Rome, Watertown and Ogdensburg Railroad Company and another, from a judgment of the

County Court of Monroe county in favor of the plaintiff, entered in the office of the clerk of the county of Monroe on the 4th day of September, 1894, upon the decision of the court affirming a judgment of a justice of the peace of the town of Webster, Monroe county.

*George H. Walker*, for the appellants.

*Hugh McKay*, for the respondent.

WARD, J.:

The trial was had in a Justice's Court of Monroe county on the 20th of July, 1893, before the justice without a jury. Judgment was rendered against the defendants, now appellants, for eighty-four dollars and two cents.

The complaint alleged that on the 13th of October, 1892, the defendants received from the Buffalo and Pittsburg Railway Company for the plaintiff 114 sacks of milkweed pods of the value of eighty-five dollars and fifty cents, property of the plaintiff, which for a reasonable compensation to be paid to them they agreed to carry and deliver to Webster, N. Y., within a reasonable time after the receipt. That the defendants had failed to so deliver, and had so negligently and carelessly treated the property that it had become decayed and worthless as well as the sacks containing the same, to the plaintiff's damage, etc. All the allegations of the complaint were denied by the defendants except the fact of their incorporation.

There was evidence before the justice tending to establish these facts: That the plaintiff resided at Webster, N. Y., which is upon a line of the defendants' road, and was engaged in the manufacture of milkweed balls and artificial flowers from milkweed pods; that on the 12th of October, 1892, he caused to be delivered to the Buffalo, Rochester and Pittsburg Railway Company, at their Pearl Creek station, and at a distance of about fifty miles from Charlotte, seventy-five sacks of milkweed pods, containing three bushels in a sack, for which he took receipts of the company for shipment to Webster, N. Y., over their line to Charlotte, and thence by the defendants' road to Webster.

The freight was in good order when delivered to this company, and on account of its being perishable the plaintiff was charged with

first-class freight, being an increase over ordinary freight not perishable. Forty of these sacks were shipped in one car to Charlotte, and thirty-five in another. The two cars reached Charlotte on the fourteenth of October, at three P. M., having been shipped on the thirteenth. The cars were placed upon the siding where deliveries are made from this Buffalo, Rochester and Pittsburg railroad to the defendants, the defendants connecting their road at that place with the Buffalo, Rochester and Pittsburg. The conductors having charge of these cars immediately reported on the fourteenth to the proper officer of the defendants at Charlotte, and delivered what is called a "through way bill" of the freight of each car from Pearl Creek, N. Y., to Webster, N. Y., stating the time of shipment from Pearl Creek, the time of arrival at Charlotte, the name of consignee and point of destination, the weight of the article, the rate of freight, which was first class, and described the articles as " 35 sks. milkweed pods ─ O. R.," and number of sacks, and gave the division of earnings between the Buffalo, Rochester and Pittsburg Railway Company and the defendants for carrying this freight, which was equal.

Without removing the freight from the cars the defendants directed an employee, who was a car inspector, to examine these cars, which he did, and pronounced them in need of repairs, and they were ordered for repairs, which, under the arrangement between the two companies, was to be done by the Buffalo, Rochester and Pittsburg Railway Company. This it took from the fourteenth of October to the nineteenth of October to accomplish, and then the defendants passed those cars with the freight over their line, about eleven miles, to Webster, where they were delivered to the plaintiff on the twentieth of October. The pods and the sacks in which they were contained were then found rotten and valueless. The plaintiff paid the freight, twelve dollars, and recovered that with the value of the pods in good order.

Upon appeal the justice's judgment was sustained by the County Court, and the defendants again appealed, and are here with two objections : *First.* That the destruction of the freight was not due to the defendants' negligence, but the delay was caused by the action of the initial company, the receiving company not being liable therefor. *Second,* that the proof does not disclose that the

freight decayed while in the possession of the defendants. The appeal, therefore, is purely upon questions of fact, which has rendered a somewhat extended statement of the facts and evidence necessary.

The Justice's Court found as a fact that this loss was due to the negligence of the defendants, and if the evidence or the inferences therefrom tend to support the conclusions of that court, they cannot be disturbed here. Assuming that the defendants became responsible in regard to this freight at the time that it reached Charlotte, and the way bill was passed to the defendants and they took charge of the cars and inspected them, it is apparent that six of the eight days which occurred from the time of the delivery of the freight to the initial company to its receipt by the plaintiff from the receiving company, occurred while the defendants were responsible for the freight, in whole or in part, and the Justice's Court might very well infer that the injury to the freight occurred during the six days.

The serious question in the case, however, is raised by the first objection. What was the duty of the defendants in this regard upon the arrival of the freight at the siding at Charlotte?

By section 34 of chapter 676 of the Laws of 1892 it is provided that every railroad corporation " * * * shall furnish sufficient accommodations for the transportation of all passengers and property which shall be offered for transportation at the place of starting within a reasonable time previously thereto, *and at the junctions of other railroads*, and at the usual stopping places established for receiving and discharging way passengers and freight," etc.

The defendants are common carriers. They had a traffic arrangement with the initial road in regard to the carrying of freight; they shared with this road in the profits of such carriage; they had notice of the arrival of this freight at the place where it was their duty to receive it, and from the nature of the freight specified in the " throught way bill," and the rate charged, the Justice's Court had a right to find that they knew it was perishable. They also knew that they were sharing in the profits of carrying this perishable freight at advanced rates. They had the right to take the freight and transport it in other cars. It was their duty to do so rather than let it remain five or six days until the cars were repaired in which it came, and during which time from the nature of the

freight it was liable to be destroyed. The defendants cannot shelter themselves from the responsibility, under the arrangement with the initial company, that it should repair the cars when their inspector pronounced them defective.

A railroad company receiving perishable property for transportation is bound to forward it immediately to its destination. This was their obligation at common law. (*Tierney* v. *N. Y. C. & H. R. R. R. Co.*, 76 N. Y. 308.)

At the time of the decision in that case there was a statute in force imposing that duty (Chap. 140, § 36, Laws of 1850), which was repealed by the Railroad Act (Chap. 565 of 1890), but the common-law obligation still remains.

In *The Ætna Insurance Company* v. *Wheeler et al.* (49 N. Y. 616) the defendants were operating a railroad running east from Ogdensburg. The Northern Transportation Company, operating a line of propellers on the great lakes and connecting with the defendants' road at Ogdensburg, and having a traffic arrangement with the defendants, delivered a quantity of flour at a warehouse in Ogdensburg used in common by the two concerns, the expense of handling being paid in common. Held, that a delivery to this warehouse by the transportation company with notice of the arrival of the flour placed it in the possession of the defendants and imposed upon them the duties and liabilities of a common carrier with reference thereto.

A stronger case in this direction is *Mills* v. *The Michigan Central R. R. Co.* (45 N. Y. 622).

In *Livingston* v. *The N. Y. C. & H. R. R. R. Co.* (76 N. Y. 631, 632) the court sustained the submission to the jury by the trial court whether the sending of the way bills to the defendant in a case very much like this in its leading features, did not put upon the defendant the responsibility of taking care of the goods, and seeing that they were forwarded, and whether there was unreasonable delay on the part of the defendant.

The same question of fact was submitted to the Justice's Court in this instance.

The through way bill was the history of the transit of the freight made up for both railroad companies governing the transit and defining the rights of the connecting corporations with reference to

this freight, and upon its receipt by the defendants, it being at the place of connection and subject to the defendants' control, the duty was imposed upon them to receive and transport the freight within reasonable time, considering its character, to the place of destination, and the trial court having found the defendants negligent in this regard, the judgment should be affirmed, with costs.

Dwight, P. J., Lewis and Bradley, JJ., concurred.

Judgment affirmed, with costs.